El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
El presente recurso de certiorari nos brinda la oportuni-dad de reiterar y aclarar la normativa pautada en Pueblo v. Pepín Cortés y otros, 173 D.RR. 968 (2008). En particular, permite que nos expresemos sobre la carga probatoria del Ministerio Público en la vista de necesidad que se debe celebrar cuando el Estado solicita la exclusión del público de la vista preliminar porque presentará el testimonio de un agente encubierto. Asimismo, nos permite pautar sobre el análisis que debe ejercer el Tribunal de Primera Instan-cia para salvaguardar todos los intereses involucrados.
I
El 14 de diciembre de 2009, el Tribunal de Primera Ins-tancia determinó causa probable para el arresto del Sr. Rolando Elicier Díaz por violación a los Arts. 5.01, 5.04, 5.07, 5.10 y 6.01 de la Ley Núm. 404-2000, según enmendada, conocida como Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 458, 458c, 458f, 458i y 459.(1) La vista preliminar fue señalada para el 28 de enero de 2010.
El 28 de diciembre de 2009, el Ministerio Público pre-sentó una moción al amparo de la Regla 23(c) de Procedi-miento Criminal, 34 L.P.R.A. Ap. II. En ella expuso que durante la vista preliminar presentaría los testimonios del agente Julio Báez Nieves y de un agente encubierto. Pun-tualizó que el agente 08NAI29 es un agente encubierto en funciones perteneciente a la División de Drogas y Narcóti-cos —región de Caguas— de la Policía de Puerto Rico, y que su testimonio en la vista preliminar versaría sobre he- *172 chos producto de sus gestiones investigativas. Por ello, para garantizar la seguridad y vida del referido agente, y proteger las investigaciones encubiertas que se encontra-ban en curso, el Estado le solicitó al foro primario que li-mitara el acceso del público a la vista preliminar única-mente durante el testimonio del agente encubierto. Atendida la petición, se pautó la vista de necesidad para el 13 de enero de 2010.
Durante la vista de necesidad, el Ministerio Fiscal pre-sentó como único testigo al agente Báez Nieves. Este de-claró estar adscrito a la División de Drogas y Narcóticos de la región de Caguas y ser la persona contacto del agente 08NAI29 durante la investigación criminal que originó el procedimiento de autos y fundamentó la presentación de cargos criminales en contra de otros imputados.(2) Además, manifestó que el agente encubierto continúa trabajando como tal para la Policía de Puerto Rico. Finalizado el tes-timonio del agente Báez Nieves, el foro de instancia de-claró “con lugar” la solicitud del Ministerio Público y or-denó que la vista preliminar se cerrara únicamente mientras el agente encubierto ofreciera su testimonio.
Oportunamente, el imputado Elicier Díaz presentó una solicitud de reconsideración y adujo que el referido dicta-men atentaba contra su derecho a un juicio público. El 22 de enero de 2010, el foro primario emitió una resolución y en reconsideración declaró “no ha lugar” la petición de cie-rre de la vista. Al así proceder, el foro de instancia concluyó que
[d]e la prueba presentada por el Ministerio Público a través de su testigo Julio Báez Nieves, solamente podemos concluir que el agente encubierto 08NAI29 continúa ejerciendo sus labores *173 como tal. No se demostró por parte del Ministerio Público que este agente est[é] realizando investigaciones dentro de la misma Región (Caguas), o que dichas investigaciones estén relacionadas con los cargos que se radicaron, o que [involucren] el mismo tipo de acto delictivo con relación al tra-siego de armas o drogas. No se demostró por parte del Minis-terio Público que se hayan tomado medidas para proteger la identidad del agente ya que, a diferencia de otros casos, en las denuncias presentadas figura el nombre y n[ú]mero de placa reales del Agente encubierto. Tampoco fue materia de prueba que este agente recibiera algún tipo de amenaza hacia él o sus familiares. No se demostró que la vida de este agente estu-viera en peligro ya fuera por la investigación en curso o que al prestar testimonio la investigación de la cual participa se ve-ría afectada.(3)
En consecuencia, el Tribunal de Primera Instancia en-tendió que el Ministerio Público no probó ninguno de los criterios esbozados por este Tribunal en Pueblo v. Pepín Cortés y otros, supra. Por ello, concluyó que el Estado in-cumplió con su carga probatoria; es decir, con el deber de demostrar que por ser un agente encubierto en funciones, “el limitar el acceso al público en la vista preliminar cons-tituía la alternativa menos abarcadora”(4) y que “la protec-ción de ese interés debía ceder ante un derecho constitucio-nal como el que nos ocupa”.(5)
Inconforme, el 12 de febrero de 2010, la Procuradora General presentó una petición de certiorari ante el Tribunal de Apelaciones. En ella adujo que el foro de primera *174 instancia erró al declarar “no ha lugar” su solicitud para que se excluyera al público de la vista preliminar única-mente mientras el agente encubierto testificara.
Así las cosas, el 30 de marzo de 2010, el foro apelativo intermedio dictó una sentencia mediante la cual revocó el dictamen del Tribunal de Primera Instancia. Al así ha-cerlo, señaló que durante la vista de necesidad la Fiscalía probó que el agente 08NAI29 continuaba en funciones y que ello constituía un interés apremiante para cumplir con la norma pautada en Pueblo v. Pepín Cortés y otros, supra. En estas circunstancias, añadió el foro apelativo interme-dio, no es necesario demostrar que dicho agente teme por su vida ni que su seguridad física o emocional corre peligro porque ello es inherente a la función encubierta que ejerce dicho agente.
Asimismo, el Tribunal de Apelaciones sostuvo que la so-licitud del Estado se circunscribía al cierre parcial de la vista preliminar; es decir, el Ministerio Público solicitó que se excluyera al público de la vista únicamente mientras el agente 08NAI29 prestaba su testimonio. Por tal razón, el foro apelativo razonó que la solicitud se ajustaba a la nor-mativa pautada en Pueblo v. Pepín Cortés y otros, supra, ya que el cierre solicitado no es más amplio que lo necesario.
Además, el Tribunal de Apelaciones puntualizó que el “preservar y proteger la seguridad personal del agente en-cubierto, se torna, en un interés apremiante que requiere mayor protección que el menoscabo circunstancial y limi-tado del derecho del imputado a [un] juicio público”.(6) Por ello, razonó que “el hecho de la identificación del agente en la denuncia reduce ciertamente la efectividad de la medida solicitada ..., pero no la derrota totalmente, en la medida que es un hecho incontrovertido que aún el testigo continúa prestando ese tipo de servicio encubierto”.(7) Consecuente-mente, el foro apelativo intermedio coligió que para propó- *175 sitos del caso de autos, “lo pertinente y determinante es el hecho de que, por las razones que sean, todavía el agente en cuestión presta estos servicios, por lo que su seguridad personal y emocional se encuentra aún comprometida”.(8)
No conteste con esa determinación, el 10 de mayo de 2010, el peticionario presentó un recurso de certiorari ante este Tribunal. En su petición, afirma que el foro recurrido erró al ordenar que la vista preliminar fuese cerrada úni-camente mientras el agente encubierto ofrecía su testimonio. Ello, a pesar que el Ministerio Público “no probó ni tan sólo uno de los criterios esbozados en [.Pueblo v. Pepín Cortés, supra]”. Posteriormente, el 1 de junio de 2010, el peticionario presentó una moción en auxilio de ju-risdicción y solicitó que ordenáramos la paralización de la vista preliminar pautada para el 7 de junio de 2010 mien-tras entendíamos el recurso de certiorari.
Subsiguientemente, el 4 de junio de 2010 emitimos una resolución mediante la cual ordenamos la paralización de la vista preliminar. Asimismo, le concedimos a la Procura-dora General un término de quince días para que mostrara causa por la cual no se debía expedir el recurso de certio-rari que presentó el peticionario y revocar la sentencia del Tribunal de Apelaciones.
Todas las partes han comparecido. Por ello, con el bene-ficio de sus argumentos, procedemos a resolver.
II
 Como es sabido, la Sexta Enmienda de la Consti-tución de Estados Unidos expresa que “[e]n todas las cau-sas criminales, el acusado gozará del derecho a ... un juicio público ...”. Enmda. VI, Const. EE. UU., L.P.R.A. Tomo 1, ed. 2008, pág. 196. Este fue uno de los primeros *176 incluidos en la Sexta Enmienda que el Tribunal Supremo federal catalogó como “elemento esencial del debido pro-ceso de ley y, por ello, aplicable a los Estados a través de la Decimocuarta Enmienda”. (Traducción nuestra.) In re Oliver, 333 U.S. 257, 272-273 (1948). Véase 6 LaFave and Israel, Criminal Procedure Sec. 24.1(a) (3ra ed. 2007). De igual forma, la Constitución de Puerto Rico garantiza que “[e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público ...”. Art. II, Sec. 11, Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 343.
Es oportuno apuntalar que el derecho a un juicio público le pertenece al acusado. El público y la prensa, más bien, gozan de un derecho a “acceso a los juicios criminales” que tiene sus orígenes —y está cimentado— en la Primera Enmienda de la Constitución de Estados Unidos y en la Sec. 4 del citado Art. II de la Constitución de Puerto Rico, “así como en el derecho de acceso a la información en manos del Estado, el cual hemos reconocido en nuestra jurisdicción como corolario del derecho a la libre expresión”. Pueblo v. Pepín Cortés y otros, supra, pág. 977. Véase Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982). Véanse, además: López Vives v. Policía de P.R., 118 D.P.R. 219 (1987); Soto v. Srio. de Justicia, 112 D.P.R. 477 (1982). “El carácter fundamental del derecho del acceso a los juicios penales a favor del público y de la prensa ha dado lugar a que se extienda este derecho a etapas anteriores al juicio. Waller v. Georgia, 467 U.S. 39 (1984); Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501 (1984) (Press-Enterprise I).] Específicamente, se ha reconocido que el derecho del acceso alcanza procedimientos como la vista preliminar”. Pueblo v. Pepín Cortés y otros, supra, pág. 978. Véase Press-Enterprise Co. v. Superior Court, 478 U.S. 1 (1986) (.Press-Enterprise Co. II).
La exigencia de un juicio público es en beneficio del acu-sado; que el público pueda observar la forma en que él está siendo enjuiciado y no condenado injustamente mantiene a *177 sus juzgadores atentos a la responsabilidad e importancia de sus funciones. Aparte de asegurar que el juez y el ñscal desempeñan sus funciones ministeriales responsable-mente, el juicio público fomenta la participación de los tes-tigos y desalienta el peijurio.(9)
A. En el pasado, la anterior Regla 23 de Procedimiento Criminal concebía la vista preliminar como una vista pri-vada a la cual, como norma general, el público no tenía acceso. El precepto disponía que la vista preliminar “será privada a menos que al comenzar la misma la persona so-licitare que fuere pública. La ‘persona’ se refiere al imputado”. E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1993, Vol. III, pág. 51. Cónsono con ello, en El Vocero de P.R. v. E.L.A., 131 D.P.R. 356 (1992), rechazamos el ratio deci-dendi de Press Enterprise Co. II, y resolvimos que este “no se aplicaba a la vista preliminar en Puerto Rico, por lo que la Regla 23 de Procedimiento Criminal, en cuanto dispone que la vista preliminar será privada a menos que el acu-sado la quiera pública, no viola la [Primera Enmienda]”. Chiesa Aponte, op. cit., pág. 51.
No obstante lo anterior, en El Vocero de Puerto Rico v. Puerto Rico, 508 U.S. 147 (1993), el Tribunal Supremo federal dejó sin efecto el dictamen emitido en El Vocero de PR. v. E.L.A., supra, y declaró la inconstitucionalidad de nuestra antigua Regla 23 de Procedimiento Criminal. Como consecuencia, mediante la Ley Núm. 197-1995, nuestra Asamblea Legislativa enmendó la Regla 23 de Procedimiento Criminal para que la vista preliminar fuese pública. Así, en la Exposición de Motivos del estatuto, el legislador declaró:
Resulta imprescindible atemperar las disposiciones de la Regla 23 con la reciente determinación del Tribunal Supremo *178 Federal para evitar la situación de que diferentes jueces pue-dan darle diferente interpretación a dicha decisión. Las en-miendas incorporadas al estatuto tienen el propósito de acla-rar el alcance de la determinación jurisprudencial, brindando así uniformidad en el procedimiento criminal.
Las enmiendas incorporadas a la Regla 23 tienen el propó-sito de atemperar dicha disposición legal con la reciente deter-minación del Tribunal Supremo Federal al establecerse que las vistas preliminares serán de naturaleza pública y dispo-nerse las circunstancias excepcionales cuando podrán ser privadas. 1995 (Parte 1) Leyes de Puerto Rico 976, 977-978.
Cónsono con esos propósitos, la Regla 23 de Procedi-miento Criminal fue enmendada y, en lo pertinente, dis-pone lo siguiente:
La vista preliminar será pública a menos que el magistrado determine, previa solicitud del imputado, que una vista pú-blica acarrea una probabilidad sustancial de menoscabo a su derecho constitucional a un juicio justo e imparcial, y que no hay disponibles otras alternativas menos abarcadoras y razo-nables que una vista privada para disipar tal probabilidad. En tales casos, la decisión del magistrado deberá fundamentarse en forma precisa y detallada. ■
También se podrá limitar el acceso a la vista preliminar cuando el magistrado determine, previa solicitud a tales efec-tos, que tal limitación es necesaria para proteger cualquier otro interés de naturaleza apremiante y que no existen otras alternativas menos abarcadoras y razonables. La decisión del magistrado deberá fundamentarse en forma precisa y detallada.
Se dispone que el magistrado deberá limitar el acceso a la vista preliminar, previa solicitud del fiscal, en aquellos casos en que éste interese presentar el testimonio de un agente en-cubierto o un confidente que aún se encuentre en esas funcio-nes o cuando esté declarando la víctima de un caso de viola-ción o actos impúdicos o lascivos. 34 L.P.R.A. Ap. II.
Del citado texto puede colegirse diáfanamente que la vista preliminar es de carácter público. Empero, la actual Regla 23 de Procedimiento Criminal, supra, reconoce cua-tro supuestos en los que la vista se puede celebrar en pri-vado, a saber: (1) cuando se pretenden proteger los dere- *179 chos constitucionales del imputado a un juicio público, justo e imparcial; (2) cuando la vista privada sea necesaria para proteger cualquier otro interés de naturaleza apre-miante; (3) cuando el Ministerio Público interese presentar el testimonio de un agente encubierto que aún se encuen-tre en funciones o de un confidente, y (4) cuando esté de-clarando la víctima de un caso de violación o de actos im-púdicos o lascivos. Pueblo v. Pepín Cortés, supra, pág. 979.
B. En cuanto al primer supuesto enunciado (cuando se pretende proteger el derecho constitucional del imputado a un juicio público, justo e imparcial), en Press-Enterprise I, el Tribunal Supremo federal resolvió que el derecho a juicio público incluido en la Sexta Enmienda de la Constitución de Estados Unidos se extiende a los procedimientos de selección del Jurado y que ello, como norma general, no atenta contra el derecho a un juicio justo e imparcial que cobija al acusado.
En el contexto fáctico, el Sr. Albert Greenwood Brown, Jr., fue acusado de violar y asesinar a una niña adolescente. Antes de comenzar la desinsaculación del Ju-rado (voir dire), Press-Enterprise Co. compareció ante la corte de primera instancia del estado de California y soli-citó acceso a ese procedimiento. En apoyo de su petitorio, adujo que el público tenía un derecho absoluto de acceder al juicio del señor Greenwood Brown, Jr., y que este comen-zaba —propiamente— con el voir dire. El Ministerio Pú-blico, por su parte, argüyó que si el Tribunal le concedía el acceso a la prensa, las contestaciones de los jurados poten-ciales adolecerían del candor necesario para asegurarle al acusado su derecho a un juicio justo. Press-Enterprise I, supra, pág. 503.
Examinados los argumentos de las partes, el foro prima-rio permitió que Press-Enterprise Co. asistiera a los proce-dimientos preliminares de desinsaculación del Jurado. Sin embargo, señaló que cerrarían el procedimiento al público tan pronto las partes comenzaran a interrogar a los jura- *180 dos potenciales sobre sus cualificaciones para imponer la pena de muerte y sobre cualquier otra área especial. El procedimiento de desinsaculación, en su totalidad, duró seis semanas y tan solo se abrieron tres días al público. Press-Enterprise I, supra, pág. 503.
Luego de constituido el Jurado, Press-Enterprise Co. le solicitó al tribunal de instancia que revelara en su totali-dad la transcripción del voir dire. Ante tal solicitud, la de-fensa de Greenwood Brown, Jr., y el Ministerio Público ale-garon que ello atentaría en contra del derecho a la privacidad del Jurado. De igual forma, el Ministerio Pú-blico añadió que los jurados contestaron las preguntas que se les hicieron amparados en una “promesa implícita de confidencialidad”. El foro primario denegó la solicitud de Press-Enterprise Co. Press-Enterprise I, supra, págs. 503-504. Una vez sentenciado, el señor Greenwood Brown, Jr., Press-Enterprise Co. solicitó nuevamente la transcripción completa del voir dire. El foro primario, nuevamente, de-negó la solicitud. íd., pág. 504.
El Tribunal Supremo federal señaló que las circunstancias por las cuales se puede excluir a la prensa y al público de un juicio criminal son limitadas, así como también indicó que la justificación del Estado para denegar el acceso debe ser de alta importancia. Así, cuando el Estado pretenda denegar el acceso del público con el propósito de impedir la divulgación de información sensitiva, se debe demostrar que la exclusión responde a un interés apremiante y que este proceder está diseñado estrechamente en consecución de ese interés. Press-Enterprise Co. I, supra, págs. 509-510, citando a Globe Newspaper Co. v. Superior Court, supra. Véase, además, Pueblo v. Pepin Cortés y otros, supra, pág. 983.
En armonía con lo anterior, el Máximo Foro federal ra-zonó que el tribunal de instancia erró al concluir que la celebración pública de los procedimientos de desinsacula-ción atentaba contra el derecho del acusado a un juicio *181 justo e imparcial y el derecho de privacidad de los poten-ciales jurados. Añadió que el foro primario no consideró otras alternativas al cierre prolongado disponibles para proteger los intereses esgrimidos, por lo que no se justifi-caba el cierre. Press-Enterprise Co. I, supra, págs. 510-511.
Posteriormente, en Waller v. Georgia, supra, el Tribunal Supremo federal estableció que la celebración cerrada e injustificada de una vista de supresión de evidencia aten-taba contra el derecho del imputado a un juicio público.
El marco fáctico del citado precedente, en síntesis, es el siguiente. Para 1981, la Policía del estado de Georgia grabó un sinnúmero de conversaciones, de las cuales se dedujo un gran esquema de lotería clandestina basado en el tráfico y volumen de los valores negociados en el Mercado de Valores del estado de Nueva York (NYSE, por sus siglas en inglés). Como resultado de estos hallazgos, treinta y seis imputados fueron acusados según el “Racketeer Influenced and Corrupt Organizations Act”. (RICO, por sus siglas en inglés) del estado de Georgia,(10) y por cometer los delitos de “apuestas comerciales” y “divulga-ción de información sobre apuestas”.(11) Waller v. Georgia, supra, pág. 41.
Iniciado el procesamiento criminal en su contra, los im-putados solicitaron del tribunal que suprimiera las grabaciones. Adujeron que las órdenes judiciales no se ob-tuvieron mediando causa probable, se basaron en informa-ción general, y no se supervisaron las grabaciones de las conversaciones.
Por su parte, el Estado solicitó al Tribunal que exclu-yera al público de la vista de supresión de evidencia. En apoyo a su contención, alegó que según las leyes de Georgia, “cualquier publicación” de las comunicaciones graba-das que no fuese necesaria y esencial conllevaría su in-admisibilidad como evidencia. Waller v. Georgia, supra, *182 págs. 41-42. Además, el Ministerio Público señaló que las grabaciones involucraban a varias personas acusadas, pero no enjuiciadas, y otras que no fueron acusadas. Consecuen-temente, razonó que la publicación de las grabaciones con-taminaría la evidencia obtenida y esta no se podría utilizar en procedimientos posteriores. Luego de escuchar a las partes, el Tribunal ordenó el cierre de la vista. Id., pág. 42.
La celebración de la vista de supresión duró siete días y tan solo dos horas y media fueron destinadas a escuchar las grabaciones obtenidas. (12) Waller v. Georgia, supra. Así, luego de celebrado el juicio, exoneraron a los imputados de los cargos de acuerdo con el “RICO Act” del estado de Georgia, pero los hallaron culpables en los cargos de “apuestas comerciales” y “divulgación de información sobre apuestas”. íd., pág. 43.
El Tribunal Supremo del estado de Georgia confirmó el veredicto de culpabilidad. En cuanto a la exclusión del pú-blico durante la celebración de la vista de supresión de evidencia, dispuso que el tribunal de instancia ponderó adecuadamente el derecho de los imputados a un juicio pú-blico y el derecho a la intimidad de los otros. Waller v. Georgia, supra.
Atendido el caso por el Tribunal Supremo federal, se reconoció que el derecho a un juicio público incluido en la Sexta Enmienda de la Constitución de Estados Unidos se extiende a las vistas de supresión de evidencia. Waller v. Georgia, supra. De este modo, reiteró a Press Enterprise I y señaló que la norma general de apertura solo se podrá circunvalar ante la existencia de un interés apremiante fun-dado en que el cierre de la vista es esencial para preservar *183 un valor superior y en que ese remedio no es más amplio de lo debido. Este interés se debe articular en conjunto con circunstancias suficientemente específicas como para per-mitirle a un tribunal de superior jerarquía revisar la ade-cuación de la orden de clausura. Waller v. Georgia, supra, pág. 45, citando a Press Enterprise I, supra, pág. 510.
Al aplicar los criterios afirmados en Press Enterprise I, el Tribunal Supremo federal razonó que la clausura total de la vista de supresión de evidencia fue injustificada y pautó los factores que rigen el análisis de controversias de esta naturaleza. Estos son: “[1] la parte que solicita la clausura de la vista debe presentar un interés apremiante que, si no se ordena el cierre de la vista, será lesionado; [2] el cierre no debe ser más amplio de lo necesario para proteger ese inte-rés; [3] el tribunal de instancia debe considerar las alterna-tivas disponibles al cierre, y [4] el tribunal debe hacer deter-minaciones adecuadas para sustentar su determinación.” Waller v. Georgia, supra, pág. 48. A esos efectos, el Tribunal expresó que “por lo único que el Ministerio Público mostró interés fue que la ‘publicación innecesaria’ de las grabacio-nes podía impedir u obstruir su uso en procedimientos cri-minales posteriores”. (Traducción nuestra.) Id. Sin embargo, aim cuando “bajo determinadas circunstancias este interés puede que justifique el cierre parcial de una vista de supre-sión de evidencia ... en esta ocasión el Estado no fue especí-fico en cuanto a quién se le quebrantaría su privacidad, cómo se infringiría este derecho y qué porciones de las gra-baciones eran las detrimentales”. (Traducción nuestra.) Id.
Consecuentemente, el Tribunal Supremo federal razonó que las determinaciones del tribunal de instancia fueron generales y no justificaron el cierre total de la vista de supresión. Waller v. Georgia, supra. Además, advirtió que ese foro “no consideró alternativas en vez del cierre total e inmediato de la vista; entre ellas: dirigir al Ministerio Pú-blico a proporcionar más detalles relacionados con la nece-sidad del cierre; ordenar el cierre de la vista solo en aque- *184 líos momentos en que se pudieran afectar los intereses que se quieren proteger”. Id., págs. 48-49.
Luego de Waller v. Georgia, supra, el Tribunal Supremo federal tuvo ante sí Press-Enterprise Co. II. Allí resolvió, específicamente, que el público y la prensa gozan de un derecho de acceso a las vistas preliminares según la Primera Enmienda de la Constitución de Estados Unidos y que ello no atenta, como norma general, contra el derecho del imputado a un juicio justo e imparcial.
En aquella ocasión, el 23 de diciembre de 1981, el estado de California presentó una denuncia contra el Sr. Robert Díaz en la que le imputó doce cargos de asesinato. Presun-tamente, el señor Díaz, enfermero de profesión, asesinaba a sus víctimas al administrarles grandes cantidades del narcótico lidocaína. Press-Enterprise Co. II, supra, pág. 3.
En la vista preliminar, el imputado le solicitó al tribunal de instancia que ordenara el cierre de la vista y excluyera al público de la sala. Ello, debido a que entendía que la exclusión del público era necesaria para proteger su dere-cho a un juicio justo e imparcial. El tribunal de instancia concedió el cierre solicitado. Precisó que el caso había ad-quirido un alto grado de notoriedad y que ello hacía nece-sario el cierre de la vista. La celebración de la vista preli-minar duró cuarenta y un días.(13) Press-Enterprise Co. II, supra, págs. 3-4.
Luego de que el tribunal de instancia determinara causa para acusar al imputado, Press-Enterprise Co. soli-citó que se revelara la totalidad de las transcripciones de la vista preliminar. Su solicitud fue denegada. Subsiguiente-mente, el Ministerio Público presentó una moción en la que *185 hizo una solicitud similar a la de Press-Enterprise Co.(14) El acusado se opuso y señaló que la revelación de la trans-cripción generaría una publicidad perjudicial. Press-Enterprise Co. II, supra, pág. 5.
Analizados los planteamientos de las partes, el foro pri-mario indicó que aun cuando el contenido de la transcrip-ción no era inflamatorio, existía una probabilidad razona-ble de que su descubrimiento le causara perjuicio al acusado y lesionara su derecho a un juicio justo e imparcial. Por ello, denegó la solicitud del Ministerio Pú-blico y de Press-Enterprise Co. Press-Enterprise Co. II, supra. El Tribunal Supremo de California consideró la con-troversia y resolvió que la Primera Enmienda de la Cons-titución de Estados Unidos no contempla un derecho de acceso a las vistas preliminares. Añadió que el acceso reco-nocido por el Tribunal Supremo federal en Press-Enterprise Co. I y Globe Newspaper Co. v. Superior Court, supra, solo se extendía a juicios criminales. De igual forma, el Máximo Foro Judicial de California señaló que las razones para el cierre invocadas en estos dos casos no eran similares a las presentadas en esa ocasión. Por ello, este foro concluyó que ni el Ministerio Público ni Press-Enterprise Co. demostra-ron que su solicitud no le causaba perjuicio al acusado, conforme lo establecido en la sec. 868 del Código Penal de California.(15) Press-Enterprise Co. II, supra, pág. 5.
Insatisfecha, Press-Enterprise Co. presentó un recurso de certiorari ante el Tribunal Supremo federal, quien expidió dicho recurso y revocó el dictamen que emitió el Tribunal Supremo de California. Al así hacerlo, el Máximo Foro federal expresó que el derecho del acusado a un juicio público al amparo de la Sexta Enmienda no protege menos que el derecho de la prensa y del público según la Primera *186 Enmienda.(16) Press-Enterprise Co. II, supra, pág. 7. “Cuando un acusado se opone a que la vista de supresión sea cerrada, ésta debe ser abierta a menos que la parte que solicita el cierre presente un interés apremiante, el cual lo más probable será lacerado” a no ser que se excluya al público de la vista. Id.
Cónsono con lo anterior, el Tribunal Supremo federal resaltó que el derecho del acusado a un juicio público no estaba en pugna puesto que fue el propio acusado quien solicitó el cierre de la vista preliminar, sino que el eje central de la controversia era el derecho del público según la Primera Enmienda de la Constitución de Estados Unidos. Press-Enterprise Co. II, supra. Por ello, luego de examinar el origen y la naturaleza de la vista preliminar según el sistema procesal penal de California,(17) el Tribunal indicó que la prensa y el público gozan de un derecho de acceso a los procedimientos criminales. Id., pág. 13. Así, al concluir que el cierre de la vista preliminar por cuarenta y un días no estuvo justificado, el Tribunal señaló lo siguiente:
Ya que el derecho de acceso bajo la Primera Enmienda se ex-tiende a las vistas preliminares según la see. 958 del Código Penal de California, tales procedimientos no se pueden cele-brar a puerta cerrada a menos que se hagan determinaciones específicas y se demuestre que el cierre es esencial para pre-servar un interés superior y que tal proceder está diseñado estrechamente para proteger dicho interés. (Traducción nuestra.) íd., págs. 13-14.
Por ello, si el interés alegado es el derecho del acusado a un juicio justo e imparcial, la vista preliminar se *187 deberá cerrar solo si se esbozan determinaciones específi-cas que demuestren, en primer lugar, que existe una pro-babilidad sustancial de que tal derecho será lacerado por la publicidad de la vista, y que eso se puede evitar mediante el cierre de la misma, y en segundo lugar, las alternativas existentes al cierre no protegen adecuadamente el referido derecho. Press-Enterprise Co. II, citando a Press-Enterprise Co. I, ya Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 581 (1980).
C. En Puerto Rico no hemos escatimado a la hora de adoptar los pronunciamientos del Tribunal Supremo federal que hemos reseñado. Así, en cuanto al tercer supuesto discutido (cuando el Ministerio Público interese presentar el testimonio de un confidente o de un agente encubierto que aún se encuentre en funciones), en Pueblo v. Pepín Cortés y otros, supra, resolvimos que ante una solicitud del Ministerio Público para que se excluya al público de la vista preliminar porque se presentará el testimonio de un agente encubierto, no procede que el Tribunal de Primera Instancia ordene —automáticamente— el cierre de la vista. Más bien, señalamos que el foro primario deberá celebrar una vista de necesidad en la cual dilucide si el cierre procede y las razones que el Ministerio Público presente para ello.
En esa ocasión, luego de encontrar causa probable para el arresto de los imputados, el Tribunal de Primera Instan-cia emitió una resolución mediante la cual los dividió en varios grupos y señaló a cada grupo una fecha individual para celebrar la vista preliminar. Llegado el día señalado para la vista de los grupos I y II, el Ministerio Público solicitó que se excluyera al público de la sala para que el foro primario determinara si era necesario o no el cierre de la misma para proteger la identidad y seguridad del agente encubierto cuyo testimonio iba a ser presentado como prueba. La defensa de los imputados se opuso a la solicitud *188 del Ministerio Público y adujo que le asistía el derecho a una vista preliminar pública. Pueblo v. Pepín Cortés y otros, supra, pág. 973.
Luego de examinar los argumentos de las partes, el Tribunal de Primera Instancia denegó la solicitud del Minis-terio Público por entender que fue tardía. En reconsidera-ción, reafirmó su determinación y ordenó dar comienzo a la vista preliminar. Así las cosas, el agente encubierto entró a sala escoltado por varios agentes y con su rostro cubierto por una capucha negra. A preguntas del tribunal, el agente contestó que no estaba dispuesto a testificar sin la capucha. Ante ello, el foro primario determinó que no exis-tía causa probable para acusar a los imputados de los gru-pos I y II dada una ausencia total de prueba. Pueblo v. Pepín Cortés y otros, supra, pág. 974.
Por su parte, en cuanto al grupo III, días antes de la fecha señalada para la celebración de la vista preliminar, el Ministerio Público presentó una moción en la que soli-citó la celebración de una vista de necesidad para determi-nar si procedía la exclusión del público ya que deseaba pre-sentar el testimonio del agente encubierto. La defensa de los imputados se opuso y alegó que la naturaleza de la vista era pública, que los imputados tenían derecho a un juicio justo e imparcial, y que el público tenía derecho a observar los procedimientos.(18) Pueblo v. Pepín Cortés y otros, supra, pág. 974.
El Tribunal de Primera Instancia accedió a lo que soli-citó el Ministerio Público. Durante la vista de necesidad se presentó el testimonio del agente Félix Disdier González, quien al momento de emitir su testimonio trabajaba en la División de Drogas y Narcóticos de Caguas y fungía como la persona contacto del agente encubierto. Así, el agente Disdier González testificó que el agente encubierto conti- *189 nuaba en funciones y realizaba investigaciones y transac-ciones relacionadas con el trasiego ilegal de sustancias controladas. Escuchado el testimonio del agente Disdier González, el foro primario determinó que el cierre de la vista preliminar no estaba justificado. Pueblo v. Pepín Cortés y otros, supra, pág. 975. Inconforme, el Ministerio Público acudió ante el Tribunal de Apelaciones en ambos casos. Luego de consolidarlos, el foro apelativo intermedio dictó una sentencia y confirmó los dictámenes recurridos, íd., págs. 975-976.
Llegado el caso ante nuestra consideración, y luego de exponer un cuidadoso análisis de los derechos constitucio-nales involucrados y su jurisprudencia interpretativa, se-ñalamos que “ante el reclamo del imputado de su derecho a un juicio público, toda solicitud de cierre de la vista preli-minar deberá evaluarse restrictivamente a favor de su apertura, según un escrutinio estricto”. Pueblo v. Pepín Cortés y otros, supra, pág. 986. Al así hacerlo, adoptamos expresamente los factores delineados por el Tribunal Supremo federal en Waller v. Georgia, supra, y apuntalamos que en nuestro ordenamiento jurídico no hay cabida para “un decreto automático que ordene el cierre de la vista pre-liminar según la Regla 23(c) de Procedimiento Criminal, supra ...”. íd., págs. 986-987.
Acorde con lo anterior, señalamos que, en los casos en que el imputado invoque su derecho a un juicio público para oponerse a una solicitud del Ministerio Público mediante la cual solicite el cierre de la vista preliminar porque desea presentar en privado el testimonio de un agente encubierto que aún se encuentra en funciones, el tribunal deberá celebrar una vista de necesidad para dilucidar si procede la solicitud. Asimismo, especificamos que en esa vista el Ministerio Público deberá demostrar que el agente encubierto aún se encuentra en funciones y que el cierre de la vista preliminar es la alternativa menos abarcadora para proteger su seguridad. En cambio, cuando se *190 trata de un agente encubierto que no está en funciones, “el Ministerio Público deberá demostrar que existe un interés apremiante que justificaría su solicitud, como lo podría ser preservar la seguridad física o emocional del agente y que la limitación del acceso del público no será más amplia de lo necesario para proteger ese interés”.(19) Pueblo v. Pepín Cortés y otros, supra, pág. 987.
Igualmente, para que la decisión del Tribunal de Pri-mera Instancia constituya un dictamen ecuánime y salva-guarde adecuadamente los intereses constitucionales invo-lucrados, añadimos que en la vista de necesidad el foro primario podrá considerar factores como los siguientes: (1) si el agente encubierto continúa trabajando en investiga-ciones de esa naturaleza; (2) si continúa trabajando en los casos o en las investigaciones relacionadas al caso objeto de la vista de necesidad; (3) si su identidad ha sido reve-lada; (4) las medidas o precauciones que ha tomado el Es-tado para preservar la identidad y seguridad del agente; (5) si el agente ha recibido amenazas, y (6) si el agente teme por su vida o seguridad física o emocional, o la de su familia.(20) Pueblo v. Pepín Cortés y otros, supra, pág. 988.
Consecuentemente, al aplicar la normativa pautada, concluimos que el Tribunal de Primera Instancia excedió sus límites de discreción y que el Tribunal de Apelaciones erró al confirmar su dictamen. Por ello, revocamos la sen-tencia dictada por el foro apelativo intermedio y ordena-mos la devolución del caso para que se celebrara una vista de necesidad.
D. Como podemos apreciar, cuando el Ministerio Pú-blico solicita del Tribunal que excluya al público de la sala *191 porque presentará como testigo a un agente encubierto, es necesario que se celebre una vista en la cual se demuestre que el cierre es imperativo para proteger la vida y seguri-dad del testigo. Pueblo v. Pepín Cortés y otros, supra. El cierre no es automático. Sin embargo, al presente no ha-bíamos tenido la oportunidad de abundar sobre la carga probatoria que el Ministerio Público debe satisfacer en esa vista y sobre el análisis que debe efectuar el Tribunal de Primera Instancia para alcanzar la determinación más adecuada a las circunstancias presentadas. Por ello, y de-bido a que nuestros pronunciamientos en Pueblo v. Pepín Cortés y otros, supra, se circunscribieron a resaltar lo im-perioso de la vista de necesidad, examinaremos la casuís-tica federal para deslindar una norma coherente que se acople a nuestro ordenamiento procesal criminal.
En Ayala v. Speckard, 131 F.3d 62 (2do Cir. 1997), el Tribunal de Apelaciones federal para el Segundo Circuito resolvió que el tribunal de distrito actuó correctamente al excluir el público de la sala mientras el agente testificaba debido a que, entre otras cosas, este continuaba en funcio-nes como agente encubierto en la misma región donde ocu-rrieron los actos delictivos. Ello, como medida efectiva para proteger la vida y seguridad del agente encubierto sin vio-lar el derecho del imputado a un juicio público.
En aquella ocasión, durante la ejecución de lo que se co-noce como un operativo “adquisición y arresto” (buy and bust), la Policía del estado de Nueva York arrestó a los Sres. Steven Ayala, Charles Okonowo y Howard Pearson por vender sustancias narcóticas ilegales. Durante el juicio, el tribunal de instancia ordenó la exclusión del público de la sala únicamente mientras los agentes encubiertos testificaban. Terminada la celebración del juicio, los señores Ayala, Oko-nowo y Pearson fueron declarados culpables, por lo que ape-laron sus sentencias. Estas fueron confirmadas.
El Tribunal de Apelaciones federal para el Segundo Cir-cuito mediante recurso de habeas corpus, confirmó las sen- *192 tencias recurridas. En su dictamen, señaló que el tribunal sentenciador actuó correctamente al ordenar, en tres oca-siones distintas, la exclusión del público de la sala mien-tras testificaban los agentes encubiertos que aún continua-ban en funciones. Ello, para proteger la vida y seguridad de los agentes. Ayala v. Speckard, supra, pág. 72.
En su análisis examinó los factores reconocidos en Waller v. Georgia, supra. En cuanto al primero de ellos, señaló que el interés aducido por el Ministerio Público —mante-ner la efectividad de las operaciones encubiertas y salva-guardar la vida y seguridad del agente— es extremada-mente sustancial, por lo que el tribunal de instancia actuó correctamente al concluir que ese interés se afectaría se-riamente si se le hubiera requerido a los agentes que tes-tificaran en corte abierta. Añadió que
... creemos que el curso más sensible es que el juez de instan-cia reconozca que la norma general es favorecer la apertura de los juicios, y requerir evidencia persuasiva que demuestre el riesgo y serio perjuicio sobre un interés importante a la hora de ordenar el cierre. Sin embargo, el juez debe considerar que mientras más extenso sea el cierre solicitado, mayor debe ser el riesgo y la gravedad del perjuicio que ese interés pudiera sufrir. (Traducción nuestra.) Ayala v. Speckard, supra, pág. 70.
Asimismo, en cuanto al segundo factor consignado en Waller v. Georgia, supra (el cierre solicitado no debe ser más amplio de lo necesario para proteger el interés), el foro apelativo federal añadió que el cierre ordenado por el tribunal de instancia se extendió únicamente mientras los agentes encubiertos testificaban y que tal remedio limitado estuvo justificado y no se prolongó más de lo necesario. Ayala v. Speckard, supra, págs. 72-73.
Posteriormente, en Glaude v. Artuz,(21) se resolvió que el tribunal de distrito actuó correctamente al rechazar el re- *193 curso de habeas corpus presentado por el peticionario en el cual alegó que se violó su derecho a un juicio público por el cierre parcial ordenado. Ello, pues la prueba desfilada en la vista de necesidad celebrada satisfizo los factores subra-yados en Waller v. Georgia, supra.
De los antecedentes fácticos se deduce que un equipo de agentes de la división de narcóticos persiguieron al Sr. Anthony Glaude hasta un apartamento ubicado en el segundo piso de un edifico en Brooklyn, Nueva York. Una vez allí, los agentes encontraron narcóticos (crack) y parafemalia para su uso. También encontraron al peticionario escondido al lado de la estufa. Para el juicio, el Ministerio Público solicitó que se excluyera al público de la sala mientras el agente encubierto emitía su testimonio. Ante esa solicitud, el tribunal sua sponte celebró una vista de necesidad para determi-nar si el cierre era necesario.(22) Glaude v. Artuz, supra.
Durante la vista de necesidad, que se celebró en privado, el agente encubierto testificó que trabajaba para la División de Narcóticos del Departamento de Policía de Nueva York y que, en capacidad de agente encubierto disfrazado de indi-gente, comúnmente adquiría drogas ilegales. Por ello, aña-dió que temía por su vida y seguridad. Tras escuchar el tes-timonio del agente encubierto, el tribunal de instancia ordenó el cierre del juicio únicamente mientras este testificara.(23) Glaude v. Artuz, supra.
*194 Celebrado el juicio, Glaude fue declarado culpable del delito de posesión de sustancias controladas en primer grado por el uso criminal de parafernalia para el uso de narcóticos. Consecuentemente, fue sentenciado a cumplir una pena de reclusión de dieciocho años. Posteriormente, Glaude presentó un recurso de habeas corpus ante el Tribunal de Distrito de Estados Unidos para el Distrito Este de la ciudad de Nueva York. Este foro judicial concluyó que sus alegaciones carecían de mérito. Glaude v. Artuz, supra, pág. 3.
El Tribunal de Apelaciones federal para el Segundo Cir-cuito, por su parte, confirmó el dictamen emitido por el tribunal de distrito. Al aplicar los factores de Waller v. Georgia, supra, señaló, en cuanto al primer factor, que cuando se pondera si ese factor se inclina a favor del cierre de la vista, debe reconocerse, en primer lugar, que la norma general favorece la apertura de los juicios. De soli-citar su cierre, se debe presentar evidencia que demuestre el riesgo sustancial de perjuicio que algún interés impor-tante sufrirá si no se ordena la exclusión del público de la sala. Por ello, “mientras más extenso sea el cierre solici-tado, mayor debe ser el riesgo y la gravedad del peijuicio que ese interés pudiera sufrir”. Glaude v. Artuz, supra, pág. 3, citando a Ayala v. Speckard, supra, pág. 70.
En referencia al segundo elemento Waller v. Georgia, supra, el foro apelativo federal advirtió que el interés del Ministerio Público de proteger la vida y seguridad del *195 agente encubierto era suficientemente persuasivo (compelling) para justificar el cierre solicitado, pues este no era más amplio de lo necesario. En ese contexto, el tribunal expresó que durante la vista de necesidad el agente encu-bierto testificó que continuaba en funciones y que temía por su vida y seguridad. En consideración a lo anterior, confirmó el dictamen del tribunal de distrito pues existía justificación para ordenar el cierre limitado del juicio. Glaude v. Artuz, supra, pág. 4.(24)
En Bowden v. Keane, 237 F.3d 125 (2do Cir. 2001), el Tribunal de Apelaciones federal para el Segundo Circuito alcanzó la misma conclusión que en Glaude v. Artuz, supra. En esa ocasión, durante la ejecución de un operativo de “adquisición y compra”, el Sr. Vernon Bowden fue arres-tado en la calle número 126 de Manhattan por haber ven-dido tres “caplets” de “crack” a un agente encubierto, el detective Billingy. Bowden v. Keane, supra, pág. 128.
Iniciado el proceso judicial, el Estado solicitó el cierre del juicio mientras el agente encubierto ofrecía su testimonio. En atención a ello, el tribunal de instancia ce-lebró una vista de necesidad en la que testificó el detective Weathers, otro agente encubierto compañero del detective Billingy, quien lo asistió en el operativo. El referido agente acotó que él, actualmente, participaba en operaciones cri-minales, que había sido amenazado de muerte por los nar-cotraficantes, quienes sospechaban que él era policía y que *196 había alrededor de veinticinco a treinta sospechosos que no habían sido arrestados. Bowden v. Keane, supra.
Escuchado el testimonio de Weathers, el foro primario concedió el cierre parcial que solicitó el Ministerio Público. En particular, el juez de instancia puntualizó lo siguiente:
“Entiendo que ahora el expediente de autos corrobora el cierre de la sala .... Creo que [el expediente] habla por sí sólo, sin dejar de mencionar la forma en que la información se dise-mina a través de este sistema. Para mí es perfectamente con-cebible que si no se ordena el cierre solicitado, se conocerá que un agente encubierto testificará en corte abierta y será iden-tificado; por lo que no es necesario que el público esté presente.” Bowden v. Keane, supra, pág. 128, citando a Bowden v. Keane, 85 F.Supp.2d 246, 248-249 (S.D. N.Y. 2000).
Celebrado el juicio, que fue cerrado únicamente mien-tras el agente Weathers testificaba, el señor Bowden fue encontrado culpable por la venta de sustancias controladas y fue sentenciado a reclusión.
El Tribunal Federal de Apelaciones para el Segundo Cir-cuito resolvió que el Tribunal de Distrito de Estados Uni-dos para el Distrito Sur de Nueva York actuó correcta-mente al denegar el recurso de habeas corpus presentado por el señor Bowden. Bowden v. Keane, supra, pág. 128. El foro apelativo federal señaló, como norma general, que la Sexta Enmienda de la Constitución de Estados Unidos le garantiza a los imputados de delito que sus juicios serán públicos y que este derecho aplica a los estados a través de la Decimocuarta Enmienda. Bowden v. Keane, supra, págs. 128-129, citando a Duncan v. Louisiana, 391 U.S. 145, 148 (1968). Sin embargo, añadió que este derecho no es abso-luto y, en ciertas instancias, un tribunal puede ordenar que se excluya al público de la sala sin violar la Constitución de Estados Unidos. Bowden v. Keane, supra, pág. 129.
A esos efectos, el foro apelativo federal razonó que el tribunal de instancia actuó correctamente al aplicar la nor-mativa de Waller v. Georgia, supra, ordenar el cierre par-cial del juicio y excluir al público únicamente mientras el *197 agente encubierto testificaba. Tal proceder estuvo justifi-cado porque el agente encubierto había testificado que aún continuaba en funciones, fue amenazado de muerte y, más importante aún, el remedio solicitado (cierre del juicio úni-camente mientras el agente declaraba) no era más amplio de lo debido. Bowden v. Keane, supra, pág. 130.
E. La normativa trazada por la jurisprudencia descrita demuestra que las instancias en las cuales se solicite el cierre de un juicio criminal, o de algún procedimiento anterior a este, se deben analizar rigurosamente. Así, como cada circunstancia que se presenta ante el tribunal es particular, el análisis se debe hacer caso a caso.
Cónsono con lo enunciado, como norma general, nuestro ordenamiento jurídico favorece la apertura de los juicios. Ello debe ser así ya que el derecho a un juicio público constituye, claramente, un derecho fundamental. Enmd. VI, Const. EE. UU., supra; Art. II, Sec. 11, Const. E.L.A., supra; In re Oliver, supra; LaFave, op. cit.; Chiesa Aponte, op. cit., Vol. II, pág. 185. Empero, cuando se solicita excluir al público de la sala, el juez de instancia debe celebrar una vista de necesidad(25) en la cual tiene que analizar lo siguiente: (1) si la parte que solicita el cierre presenta un interés apremiante, el cual se perjudicará si no se concede el cierre; (2) si el cierre solicitado no es más amplio de lo necesario para proteger ese interés, y (3) las alternativas razonables disponibles. Además, como factor adicional, el tribunal deberá realizar determinaciones adecuadas y suficientemente detalladas para sostener el remedio concedido. Waller v. Georgia, supra; Pueblo v. Pepín Cortés y otros, supra. Véanse, además: Bowden v. Keane, supra; Glaude v. Artuz, supra; Ayala v. Speckard, supra.
*198 Ahora bien, en las instancias en que el Ministerio Fiscal solicite la exclusión del público de la sala porque presentará como testigo a un agente encubierto, el juez de instancia deberá tener presente la normativa pautada en Pueblo v. Pepín Cortés y otros, supra, en la vista de necesidad que se celebre. Esto es, si el Ministerio Público anuncia que presentará el testimonio de un agente encubierto que aún sigue en funciones, deberá demostrar (1) que el agente aún se encuentra en funciones, y (2) que el cierre es la alternativa menos abarcadora para proteger la vida y seguridad de dicho agente. íd., pág. 987. Nótese que en estas instancias la vida y seguridad del agente constituyen, propiamente, ese interés apremiante reconocido como primer factor en Waller v. Georgia, supra. Véanse: Bowden v. Keane, supra; Glande v. Artuz, supra; Ayala v. Speckard, supra.
En cambio, cuando el Ministerio Público anuncia como testigo a un agente encubierto que no se encuentra en fun-ciones, deberá demostrar (1) que existe un interés apre-miante que justifica su solicitud de cierre, y (2) que la li-mitación del acceso del público no será más amplia de lo necesario para proteger dicho interés. Pueblo v. Pepín Cor-tés y otros, supra, pág. 987. Adviértase que según estas circunstancias, a diferencia de la anterior, la Fiscalía de-berá presentar prueba sobre la existencia de un interés apremiante que justifique la concesión del cierre solicitado (primer factor esbozado en Waller v. Georgia, supra) ya que el agente que testificará no se encuentra en funciones y ello presupone que su vida y seguridad no se encuentran en peligro. Sin embargo, ello no es óbice para que se pueda desfilar prueba que demuestre lo contrario y que el interés apremiante es “preservar la seguridad física o emocional del agente ...”. Pueblo v. Pepín Cortés y otros, supra, pág. 987.
Por su parte, en cuanto a la amplitud del remedio soli-citado (segundo factor esbozado en Waller v. Georgia, su *199 pra), nótese que en ambas instancias el Ministerio Público debe demostrar que el cierre es la alternativa menos abar-cadora —no es más amplio de lo necesario— para proteger la vida y seguridad del agente encubierto. En ese sentido, el juez de instancia debe tener presente que “mientras más extenso sea el cierre solicitado, mayor debe ser el riesgo y la gravedad del perjuicio” que el interés a proteger pueda sufrir. (Traducción nuestra.) Ayala v. Speckard, supra, pág. 70. Es decir, debe existir una proporción racional entre el derecho del imputado a un juicio público y el cierre solici-tado, como también este debe estar correlacionado con el interés que se quiere proteger mediante la exclusión del pú-blico de la sala. Por ello, está en manos del juez de instancia ponderar minuciosamente estas variables para así alcanzar la solución que más se adecúe a las circunstancias particu-lares del caso.(26)
Por último, en las dos instancias antes descritas el foro primario debe considerar las alternativas disponibles al cie-rre solicitado (tercer factor enunciado en Waller v. Georgia, supra), y deberá realizar determinaciones adecuadas y sufi-cientes para sostener el cierre solicitado (cuarto factor esbo-zado en Waller v. Georgia, supra).
Ill
El peticionario aduce que el Tribunal de Apelaciones erró al dictar una sentencia, revocar al Tribunal de Pri-mera Instancia y señalar que procedía el cierre de la vista preliminar durante el testimonio del agente encubierto. *200 Añade que durante la vista de necesidad el Ministerio Pú-blico no probó “ni tan solo uno de los criterios esbozados en Pueblo v. Pepín Cortés, supra”. No le asiste la razón. Veamos.
En la resolución emitida por el Tribunal de Primera Ins-tancia, ese foro señaló que la prueba presentada en la vista de necesidad solo demostró que el agente 08NAI29 conti-nuaba en funciones. No obstante, razonó que el Ministerio Público no probó ninguno de los factores sugeridos en Pueblo v. Pepín Cortés y otros, supra, y consecuentemente, in-cumplió con su carga probatoria de demostrar que el cierre solicitado no es más amplio de lo necesario. Por ello, el foro primario declaró, en reconsideración, “no ha lugar” la soli-citud de cierre que presentó el Ministerio Público.
Este raciocinio constituye un error manifiesto. En primer lugar, resulta contradictorio señalar, por un lado, que el Ministerio Público demostró que el agente encubierto aún continúa en funciones y luego colegir, por otro lado, que no se probó ninguno de los factores esbozados en Pueblo v. Pepín Cortés y otros, supra. Tal conclusión omite que “demostrar que el agente encubierto continúa en funcio-nes” constituye, propiamente, uno de los factores reconoci-dos en Pueblo v. Pepín Cortés y otros, supra.
En segundo lugar, el Tribunal de Primera Instancia in-cidió al concluir que el Estado incumplió con su carga pro-batoria al no demostrar que “limitar el acceso al público en la vista preliminar constituía la alternativa menos abarca-dora” y que “la protección de ese interés debía ceder ante un derecho constitucional como el que nos ocupa”. Anejo 1 de la Petición de certiorari, págs. 32-33. Tal proceder es desatinado porque no considera que en las instancias en que el Ministerio Público anuncia que presentará el testi-monio de un agente encubierto, la carga probatoria exigida por Pueblo v. Pepín Cortés y otros, supra, solo requiere que el Ministerio Público demuestre: (a) que el agente encu-bierto aún se encuentra en funciones, y (b) que el remedio *201 solicitado es la alternativa menos abarcadora para prote-ger la seguridad de dicho agente. Pueblo v. Pepín Cortés y otros, supra, pág. 988. Así, aun cuando el derecho del im-putado a un juicio público es fundamental, cuando se de-muestra que el agente encubierto continúa en funciones resulta evidente que su vida y seguridad, como la de su familia, corren peligro, y ello constituye un interés apre-miante que se debe ponderar adecuadamente. Véanse: Pueblo v. Garay López et al., 181 D.P.R. 779 (2011); Glaude v. Artuz, ante, esc. 22. Véase, además, Pueblo v. Luciano Arroyo, 83 D.P.R. 573, 582 (1961) (“Los jueces no debemos, después de todo, ser tan inocentes como para creer decla-raciones que nadie más creería”).
Además, al declarar “no ha lugar” la solicitud de cierre, el foro primario tampoco consideró que el cierre solicitado en el caso de autos es parcial y no total. Es decir, el Minis-terio Público solicitó que se excluyera al público de la sala únicamente mientras el agente encubierto emite su testimonio. Tal remedio es racionalmente proporcional al derecho del imputado a un juicio público y está correlacio-nado con el interés que el Ministerio Público pretende pro-teger (vida y seguridad del agente encubierto que aún con-tinúa en funciones) mediante el remedio que solicita. Ayala v. Speckard, supra, pág. 70.
Adviértase, además, que en esta ocasión no se trata de un cierre total de la vista preliminar o de la exclusión del público de la sala por un tiempo prolongado. Véanse: Press Enterprise Co. I (en donde el cierre de los procedimientos de desinsaculación del Jurado duró seis semanas y tan solo tres días fue abierto al público); Waller v. Georgia, supra (en donde la celebración cerrada de una vista de supresión de evidencia duró siete días y tan solo dos horas y media fueron destinadas a la presentación de la prueba que sus-tentó dicho cierre); Press Enterprise Co. II (en donde el cierre de la vista preliminar duró cuarenta y un días). Por el contrario, el remedio solicitado en el caso de autos es *202 temporero, y cuya duración incide en lo mínimo sobre el derecho del imputado a un juicio público. En conclusión, el cierre solicitado no es más amplio de lo necesario para pro-teger la vida y seguridad del agente encubierto que testifi-cará en la vista preliminar.(27)
Asimismo, entendemos que el Tribunal de Primera Ins-tancia erró al sustentar su dictamen, en parte, en la reve-lación de la identidad del agente encubierto porque incluyó su nombre y número de placa reales en la denuncia que presentó. Aun cuando las medidas tomadas para proteger la identidad del agente encubierto constituyen un factor que se debe considerar, tal proceder no convierte en inofi-ciosa la solicitud de cierre del Ministerio Público.(28) Véase United States v. Smith, 780 F.2d 1102, 1108 (1985) (en donde se resolvió que la solicitud del Ministerio Público no se desvirtúa simplemente porque el acusado conozca el nombre e identidad reales del confidente).
En cuanto al resto de los factores sugeridos en Pueblo v. Pepín Cortés y otros, supra, pág. 988 (si el agente encu-bierto ha sido amenazado y si continúa trabajando en los casos o en las investigaciones relacionadas al caso objeto de la vista de necesidad), el Tribunal de Primera Instancia concluyó que el Ministerio Público no desfiló prueba que los demostrara. Empero, debemos tener presente que en su Escrito en Cumplimiento de Orden, el Estado puntualizó que el agente encubierto es testigo esencial en varios pro-cedimientos criminales adicionales que están pendientes en el distrito judicial de Caguas(29) y que son producto de sus funciones encubiertas. Tal y como adelantamos, toma-mos conocimiento judicial de estos hechos al amparo de la *203 Regla 11(A)(2), (B) y (D) de Evidencia de 1979 (equivalente a la Regla 201 de Evidencia de 2009 (32 L.RR.A. Ap. VI)).
Contrario a la opinión disidente, este Tribunal reafirma que la vida y seguridad de un agente encubierto que conti-núa trabajando en investigaciones de esa naturaleza, cons-tituye un interés apremiante del Estado. Ante el justo balance de los intereses en juego, ¿no es acaso el derecho a la vida el de mayor jerarquía en nuestro ordenamiento cons-titucional? Contestamos en la afirmativa. No podemos ser tan ingenuos en pensar que la vida y la integridad física de un agente que se adentra en el corazón mismo de la cons-piración y penetra los más oscuros recintos del crimen or-ganizado no está en inminente riesgo.
Cónsono con lo anterior, colegimos que el Tribunal de Apelaciones actuó correctamente al dictar sentencia y re-vocar el dictamen que emitió el Tribunal de Primera Instancia. El foro apelativo intermedio no abusó de su dis-creción al concluir que las circunstancias presentadas en el caso de autos son meritorias y justifican que se conceda el cierre parcial solicitado por el Ministerio Público.
IV
Por los fundamentos enunciados, expedimos el recurso de “certiorari”presentado por el peticionario y confirmamos la sentencia dictada por el Tribunal de Apelaciones. Por consiguiente, ordenamos la devolución del expediente de autos al foro de primera instancia para que continúen los procedimientos de la vista preliminar conforme a lo aquí pautado.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió urna opinión disidente, a la que se unieron el Juez Presi-dente Señor Hernández Denton y la Jueza Asociada Se-ñora Fiol Matta.

 Esta determinación de causa probable para el arresto se hizo en ausencia del peticionario porque el Ministerio Público presentó la denuncia del caso de autos en ausencia del peticionario para proteger la identidad del agente encubierto.

 Tomamos conocimiento judicial de los casos Pueblo v. Luis A. Otero Lebrón, Crim. Núm. E1VP200903087, y Pueblo v. Israel García García, Crim. Núms. E1VP200903090, E1VP200903091, E1VP200903091, E1VP200903092, E1VP200903093, y E1VP200903099, los cuales fueron presentados a raíz de las ges-tiones encubiertas investigativas del agente 08NAI29, y quien, a su vez, ha sido anunciado como testigo de cargo en dichos procedimientos.

 Véase Apéndice de la Petición de certiorari, pág. 32. El Tribunal de Primera Instancia también señaló que era consciente del impedimento del Ministerio Público en revelar información detallada sobre las investigaciones que llevaba en curso el agente encubierto. Sin embargo, el foro primario añadió que el Ministerio Público sí podía, de forma general, “poner al Tribunal en posición de determinar que en el curso y protección de las mismas, la seguridad del agente corre peligro haciendo necesaria la solicitud [de cierre]”. íd., pág. 32 esc. 2.
Asimismo, el Tribunal de Primera Instancia indicó que aun cuando no compar-tía “el planteamiento de la defensa en cuanto a que el nombre y número de placa [contenidos en la denuncia] revelan la identidad del agente, ciertamente es evidencia de una medida de seguridad menos tomada por el estado para proteger la identidad”, íd., pág. 32 esc. 3.

 íd., pág. 32.

 íd., págs. 32-33.

 Véase Apéndice de la Petición de certiorari, pág. 85.

 Id.

 Íd.

 Press Enterprise Co. v. Superior Court of Cal., 464 U.S. 501 (1984).

 Ga. Code Ann. Secs. 16-14-1 a 16-14-15 (1982, Supp. 1983).

 Ga. Code Ann. Secs. 16-12-22 y 16-12-28 (1982).

 El resto de la vista versó sobre el procedimiento que se siguió para obtener la autorización para grabar las comunicaciones, las órdenes de allanamiento, y la forma en que estas se ejecutaron.
Como consecuencia de lo anterior, y ante la admisión del Ministerio Público de que una gran cantidad de los documentos allanados eran de naturaleza personal y no estaban relacionados a crimen alguno, el Tribunal ordenó la supresión de dichos documentos.

 La mayoría de la prueba presentada fue científica, pero también se presentó el testimonio de varios de los compañeros del imputado que trabajaron durante los turnos en que las víctimas fueron asesinadas. Además, el imputado no desfiló prueba, pero sí contrainterrogó vigorosamente a los testigos presentados.

 Press-Enterprise Co. se unió a la solicitud del Ministerio Público.

 Cal. Penal Code Ann. Sec. 868 (West 1985).

 Inicialmente, el Tribunal Supremo federal razonó que la controversia ante su consideración no era académica. Ello, pues aun cuando la transcripción de la vista preliminar se le reveló al público después que el acusado renunciara a su derecho a un juicio por jurado, lo cierto era que la controversia se podía repetir y evadir la revisión judicial. Press-Enterprise Co. v. Superior Court, 478 U.S. 1, 6 (1986) (Press-Enterprise II), citando a Globe Newspaper Co. v. Superior Court, 457 U.S. 596 (1982), y a Gannett Co. v. DePasquale, 443 U.S. 368 (1979).

 Véase Press-Enterprise Co. II, supra, págs. 8-13.

 La defensa de los imputados adujo, además, que la solicitud del Ministerio Público fue tardía y que no se les notificó. Pueblo v. Pepín Cortés y otros, 173 D.P.R. 968, 974 (2008).

 Resolvimos, además, que la solicitud del Ministerio Público debe estar fun-damentada y, salvo justa causa, se le deberá notificar al imputado dentro de un tiempo razonable antes de la celebración de la vista preliminar. Pueblo v. Pepín Cortés y otros, supra, pág. 988.

 El testimonio del agente encubierto no es necesario para demostrar estos factores, aunque nada impide su comparecencia y testimonio en la vista de necesidad. Id.

 1999 U.S. App. LEXIS 18147, *1, 189 F.3d 460 (2do Cir. 1999), Opinión no publicada. Nótese que su uso es permitido según la Regla 32.1 del Tribunal Federal de Apelaciones para el Segundo Circuito.

 Antes de celebrar la vista de necesidad, el Ministerio Público adujo que el agente encubierto había realizado aproximadamente doscientos sesenta compras de narcóticos, que tenía casos pendientes en los tribunales de Brooklyn y Manhattan, y que posiblemente sería reasignado al equipo de operaciones tácticas de Brooklyn. 1999 U.S. App. LEXIS 18147, 1; Glaude v. Artuz, 189 F.3d 460 (2do Cir. 1999).

 Al así ordenarlo, el tribunal de instancia señaló lo siguiente:
“Luego de interrogar al agente, y basándome en lo que me ha dicho, básica-mente que ha hecho más de 200 compras y que la gran mayoría de esos casos crimi-nales están pendientes, además del hecho de que él aún se encuentra en funciones encubiertas, me veo obligado a tomar conocimiento judicial de lo siguiente: (1) los procedimientos criminales en los cuales están involucrados los asesinos del agente Byrnes, quien fue asesinado por la orden de un capo para darle una lección a la policía sobre el ‘me tumbas uno mío, yo te tumbo uno tuyo’, aún están pendientes, y (2) las declaraciones hechas por varias personas de la uniformada sobre los recientes asesinatos de agentes de la policía.
*194 “Además, el tribunal toma conocimiento judicial de la muerte del agente Hat-cher (DEA), quien fue asesinado en Staten Island mientras fungía como agente en-cubierto y cuyo asesino está siendo perseguido; y todo esto, obviamente, tiene que estar en las mentes de cada agente encubierto; y ello asusta; y es increíble cómo estos hombres y mujeres tienen el valor de salir a la calle y hacer lo que tienen que hacer día a día; y nuestra sociedad, incluyendo nuestras cortes, ciertamente no deben po-ner la vida de estas personas en más riesgo del que está, por lo que encuentro que existen suficientes razones convincentes para conceder lo solicitado; en específico, la protección de la vida de este agente encubierto, la protección de la efectividad de su trabajo, y la protección de la efectividad del trabajo de todas las personas que se desempeñan en esa posición. Por lo que cerrar la sala por varios minutos mientras el agente testifica constituye un precio pequeño a pagar por esa efectividad.” (Traduc-ción nuestra.) Glaude v. Artuz, supra, pág. 2.

 Véanse, además: Nieblas v. Smith, 204 F.3d 29 (2do Cir. 1999) (se resolvió que el tribunal de distrito actuó correctamente al denegar un recurso de habeas corpus ya que el cierre del juicio mientras el agente encubierto testificaba, no violó el derecho del acusado a un juicio público. Ello, puesto que en la vista de necesidad celebrada el agente declaró que continuaba en funciones encubiertas en el área sur de Brooklyn, y que por su seguridad su identidad no se debía revelar); Brown v. Artuz, 283 F.3d 492 (2do Cir. 2002) (se confirmó un dictamen del tribunal de distrito que denegó un recurso de habeas corpus luego de resolver que el cierre parcial del juicio durante el testimonio de un agente encubierto no fue una aplicación irrazona-ble de Waller v. Georgia, 467 U.S. 39 (1983). Ello, pues, durante la vista de necesidad el agente encubierto declaró que aún continuaba en funciones en la misma región que el acusado fue arrestado y que temería por su seguridad si emitía su testimonio en corte abierta).

 Véanse: Pueblo v. Pepín Cortés y otros, supra; People v. Hinton, 31 N.Y.2d 71 (1972) (caso medular del estado de Nueva York de donde surge el pseudónimo de las vistas de necesidad: Hinton Hearings).

 Claro está, en las ocasiones en que la prensa o ciudadanía se opongan al cierre solicitado por el Ministerio Público, el juez de instancia debe tener presente que el público y la prensa gozan de un derecho fundamental de “acceso a los juicios crimi-nales”, el cual emana de la Primera Enmienda de la Constitución de Estados Unidos y de la See. 4 del Art. II de la Constitución de Puerto Rico. Press Enterprise Co. II; Globe Newspaper Co. v. Superior Court, supra; Press-Enterprise Co. v. Superior Court of Cal., 464 U.S. 501 (1984) (Press Enterprise I). Véase, además: Pueblo v. Pepin Cortés y otros, supra. Así, el juez de instancia deberá ponderar entre el “derecho de acceso” de la prensa y ciudadanía, y la prueba que presente el Ministerio Público en apoyo de los factores esbozados en Waller v. Georgia, supra. Véanse: Press Enterprise Co. II, supra; Pueblo v. Pepín Cortés y otros, supra.

 Somos conscientes que el remedio aquí concedido se limita al cierre de la vista preliminar única y exclusivamente mientras el agente encubierto emite su testimonio. Así, una vez culmine dicho testimonio, la vista preliminar se deberá abrir nuevamente.

 Distinto hubiera sido si el agente encubierto hubiese testificado en sala abierta en alguno de los otros procedimientos criminales pendientes.

 Véase Escrito en cumplimiento de orden, pág. 9 nota 3.